IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **RIDGELOCH HOMEOWNERS ASSOCIATION, INC.**<br>℅ DannLaw<br>15000 Madison Avenue,<br>Lakewood, OH 44107<br><br>         Plaintiff,<br><br>v.<br><br>**THE SHERWIN-WILLIAMS COMPANY**<br>℅ Heidi G. Petz, Chair, President, and C.E.O.<br>9 Higbee Building<br>101 West Prospect Avenue<br>Cleveland, OH 44115<br><br>AND<br><br>**THE SHERWIN-WILLIAMS MANUFACTURING COMPANY, USA**<br>℅ Heidi G. Petz, Chair, President, and C.E.O.<br>9 Higbee Building<br>101 West Prospect Avenue<br>Cleveland, OH 44115<br><br>AND<br><br>**SHERWIN-WILLIAMS CHEMICAL INDUSTRY GROUP, INC.**<br>℅ Heidi G. Petz, Chair, President, and C.E.O.<br>9 Higbee Building<br>101 West Prospect Avenue<br>Cleveland, OH 44115<br><br>AND<br><br>**USA SHERWIN-WILLIAMS CHEMICAL LLC**,<br>℅ Heidi G. Petz, Chair, President, and C.E.O. | **CASE NO. 1:26-cv-1484**<br><br>**JUDGE**<br><br>**MAGISTRATE JUDGE**<br><br>**<u>COMPLAINT FOR DAMAGES</u>**<br><br>**JURY DEMAND ENDORSED HEREON** |

9 Higbee Building
101 West Prospect Avenue
Cleveland, OH 44115

        Defendants.

Plaintiff, Ridgeloch Homeowners Association, Inc. ("Plaintiff" or "Ridgeloch") by and through undersigned counsel, bring this action against Defendants, The Sherwin-Williams Company, The Sherwin-Williams Manufacturing Company, USA, Sherwin-Williams Chemical Industry Group, Inc., and USA Sherwin-Williams Chemical LLC (hereinafter collectively referred to as "Sherwin-Williams" or "Defendants"). Upon information and belief and based on the investigation to date of Ridgeloch's counsel, Ridgeloch alleges as follows:

## NATURE OF ACTION

1. This is an action asserting breach of express warranty, breach of implied warranties, negligence/negligent design, unfair and deceptive acts and practices, products liability for inadequate design, unjust enrichment, and seeking damages, declaratory relief, and injunctive relief in connection with defective caulk designed, manufactured, marketed, advertised and sold by Sherwin-Williams.

2. At all times material hereto, Sherwin-Williams designed, manufactured, and sold its 1050 QD Quick Dry Caulk ("the Caulk") and represented, marketed, and warranted that it: exceeds performance requirements of industry standards; is "Quick Dry"; is "paintable in 20 minutes"; "features long lasting flexibility and adhesion for a variety of jobs"; is "perfect for joints exposed to moderate levels of wear and movement"; is "for interior/exterior use"; has "good flexibility"; "exceeds all requirements of Specification ASTM C834"; is "crack resistant"

2

and "water/weather resistant" (collectively, referred to herein as "Durability Representations").[1]

3. Incorporated in 1979, Ridgeloch is a residential community organization that manages single-family homes and townhomes in Raleigh, North Carolina. In total, there are 41 buildings and 196 units in Ridgeloch. Ridgeloch, by and through its members, spent over $800,000 on Sherwin-Williams' products, including the Caulk at issue in this litigation, to maintain and repair the integrity of the exterior of the homes within its association.

4. Due to the defective nature of the Caulk, Ridgeloch now faces extensive repairs due to having to remove and replace the cladding, remove the Caulk, and re-paint the buildings in order to correct the damage to its homes and prevent further property damages.

5. In addition to the Durability Representations, Sherwin-Williams also warranted that the Caulk "exceeds all requirements of Specification ASTM C834," the industry standard for latex caulk and incorporated into the North Carolina Building Code, and warranted that the Caulk will "perform in accordance with the specifications" for fifty-five (55) years, or Sherwin-Williams will "replace the product at no cost or refund the original purchase price."[2]

6. In contrast to the warranty and Durability Representations, the Caulk was defective at the time of sale and thereafter due to "plasticizer migration."

7. Plasticizer migration is caused by phthalates in the Caulk formula degrading and migrating to the surface (the "Defect"), resulting in cracking and sticky surfaces that attracts

---

[1] Sherwin-Williams makes these representations on its website as well as on the Caulk product description sheet. *See* https://www.sherwin-williams.com/document/PDS/en/035777253366/ (last visited June 29, 2026).

[2] *See id.*

3

debris which discolors, degrades, and dramatically decreases the lifespan of the Caulk.

8. Upon information and belief, plasticizer migration only occurs in caulk that is not formulated correctly.

9. Consequently, the Caulk does not perform as expressly warranted and represented, and its accelerated degradation shows that it is neither durable nor suitable for use as a building product, especially on residences.

10. Sherwin-Williams' warranties, Durability Representations, and claims related to exceeding industry standards became a part of the basis of the bargain when Plaintiff or its agents purchased the Caulk.

11. Sherwin-Williams knew or should have known the Caulk did not satisfy its warranties, the Durability Representations, or claims related to exceeding industry standards, and as a result, Sherwin-Williams knew or should have known its Caulk was defective in design, formulation, and/or manufacture, was not fit for its ordinary and intended use, was not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Sherwin-Williams or with the reasonable expectations of ordinary consumers such as Plaintiff.

12. Sherwin-Williams began producing putty over a century ago, and has been designing, manufacturing, supplying, marketing, and selling caulk for decades. Upon information and belief, Sherwin-Williams is or should be aware of the potential for the plasticizer migration in its Caulk but did nothing to correct the defective design or formulation

4

that resulted in degradation of the life expectancy of the Caulk, or other defects alleged herein.

13. As a result of Sherwin-Williams' defective Caulk and related product misrepresentations, Plaintiff has suffered and continues to suffer other property damage and diminution of value to the residences on which the Caulk was applied.

14. Accordingly, this action seeks damages, declaratory and injunctive relief, costs, attorneys' fees, and any other available relief.

## THE PARTIES

15. Plaintiff Ridgeloch Homeowners Association, Inc. is a non-profit corporation organized and existing under the laws of the State of North Carolina. Plaintiff is charged with the management and operation of the Ridgeloch Planned Community in Raleigh, North Carolina.

16. Defendant The Sherwin-Williams Company is an Ohio corporation with its principal place of business in Cleveland, Ohio. The Sherwin-Williams Company is a multinational company with subsidiaries that manufacture and market high-performance coatings, sealants, and specialty chemicals, primarily for maintenance, repair, and improvement applications, including the Caulk.

17. The Sherwin-Williams Company is the parent company of the other Defendants: The Sherwin-Williams Manufacturing Company; USA Sherwin-Williams Chemical Industry Group, Inc.; and USA Sherwin-Williams Chemical LLC. Moreover, The Sherwin-Williams Company oversees and otherwise performs all design, manufacture, distribution, marketing, and sales of the Caulk in North Carolina and throughout the United States.

18. Defendant The Sherwin-Williams Manufacturing Company is an Ohio

5

corporation with its principal place of business in Cleveland, Ohio. The Sherwin-Williams Manufacturing Company is a wholly-owned subsidiary of The Sherwin-Williams Company and manufactures protective paints and coatings for home and industry use.

19. Defendant USA Sherwin-Williams Chemical Industry Group, Inc. is an Ohio corporation with its principal place of business in Cleveland, Ohio. USA Sherwin-Williams Chemical Industry Group, Inc. is a wholly-owned subsidiary of Defendant The Sherwin-Williams Company and upon information and belief manufactures protective paints and coatings for home and industry use.

20. Defendant USA Sherwin-Williams Chemical LLC is an Ohio corporation with its principal place of business in Cleveland, Ohio. subsidiary of Defendant The Sherwin-Williams Company and manufactures. USA Sherwin-Williams Chemical LLC is a wholly-owned subsidiary of Defendant The Sherwin-Williams Company and upon information and belief manufactures protective paints and coatings for home and industry use.

21. The decisions, acts, and omissions alleged here were conceived by, implemented, and at all times carried out by Defendant The Sherwin-Williams Manufacturing Company, directly or in concert with Defendant The Sherwin-Williams Company, USA Sherwin-Williams Chemical Industry Group, Inc., and USA Sherwin-Williams Chemical LLC.

22. Defendants used, comingled, and combined their resources to design, develop, manufacture, market, and sell the Caulk.

23. At all times relevant here, the Defendants were actual or *de facto* joint ventures in the design, development, manufacture, marketing, and sale of the Caulk.

6

24.     Defendants are individually, jointly, and severally liable to Plaintiff for damages suffered by Plaintiff arising from Defendants' design, manufacturing, marketing, labeling, distribution, sale, and placement of the defective Caulk product at issue in this suit. All acts were effectuated directly or indirectly through Defendants' respective agents, servants, employees, and/or owners, acting within the course and scope of their representative agencies, services, employments, and/or ownership.

## JURISDICTION

25.     Plaintiff has standing to bring this action on behalf of itself and its members under North Carolina law pursuant to N.C. Gen. Stat. § 47F-3-102, and its Articles of Incorporation and the Declaration of Covenants, Conditions, and Restrictions attached thereto. Plaintiff is obligated to provide for exterior maintenance in the course of the management of the properties in its association and is permitted to institute or otherwise intervene in litigation on matters affecting its community and exercise powers which are necessary and proper for the governance and operation of the association.

26.     Further, Plaintiff has associational standing because: (1) at least one individual homeowner has standing to sue in his or her own right as he or she suffered harm from the defective Caulk and each individual homeowner suffered economic injury at the point of sale when he or she purchased the defective Caulk; (2) Plaintiff has responsibility under its Articles of Incorporation and Declaration of Covenants, Conditions Restrictions attached thereto for exterior maintenance as a core purpose for Plaintiff's existence which relates to the application of the Caulk to the exterior of the units managed by Plaintiff; and (3) individual participation is

7

not required based upon the alleged injury suffered and to be redressed as the Caulk was defective at the point of purchase and each homeowner suffered the same economic injury as a result.

27. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000 and complete diversity exists between the parties. Plaintiff, as a non-profit corporation organized and existing under the laws of the State of North Carolina, is a citizen of North Carolina. Sherwin-Williams is a citizen of Ohio because it was incorporated and has its principal place of business in Ohio

28. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

29. This Court has personal jurisdiction over Defendants because Defendants have their principal place of business within this District, Defendants have substantial aggregate contacts with this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States and the State of Ohio.

30. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendants transact business in this District, Defendants have intentionally availed themselves of the laws and markets within this District, and Defendants have their principal place of business within this District.

## FACTUAL ALLEGATIONS

8

**A. Ridgeloch's Purchase of the Caulk and Discovery of the Black Residue**

31.     Pursuant to Ridgeloch's Articles of Incorporation and Declaration of Covenants, Conditions Restrictions attached thereto, it is the duty of Ridgeloch to cause the exterior of the dwellings managed by the association to be maintained. Exterior maintenance includes paint, repair, and other exterior improvements.

32.     In fulfilling its obligations to its community, Ridgeloch hired a contractor (the "Contractor") to paint the exterior of the units in the association. Part of the project to repaint the exterior of the units included application of the Caulk.

33.     The Contractor purchased the Caulk from a Sherwin-Williams store in North Carolina at the direction of Ridgeloch.

34.     Before the Contractor made the purchase, Ridgeloch considered Sherwin-Williams' strong reputation, considered its past experience with Sherwin-Williams' products, and was induced to purchase the Caulk based upon Sherwin-Williams' advertising claims concerning the Caulk's high quality and long-lasting protection.

35.     The exterior maintenance project involving the Caulk commenced in May 2022 and was completed in December 2024.

36.     The Caulk was applied in accordance with Sherwin-Williams' instructions and utilized in an ordinary and foreseeable manner.

37.     The Contractor reviewed the application instructions on the Caulk's label prior to applying the Caulk and applied the Caulk in accordance therewith.

9

38. Following the application of the Caulk, Ridgeloch first received complaints from residents in or around May 2024. Association residents reported instances of black residue covering portions of the recently-applied Caulk.

39. In or around August 2024, Ridgeloch discovered black residue covering the Caulk was more widespread than previously thought based on further complaints from Association residents.

40. Ridgeloch inquired with the Contractor who applied the Caulk to see if he could explain what the black residue was or why it was appearing, and he referred Ridgeloch to Chris Best, a Sherwin-Williams coatings representative.

41. Ridgeloch met with Mr. Best in or around September 2024. Mr. Best claimed the black residue was simply mold or mildew due to the environment, and advised power washing the units where the black residue was present.

42. Accordingly, Ridgeloch paid over $3,000 to have seven units pressure washed with a chlorine solution in or around November 2024.

43. However, the black residue returned within six months and had become more widespread than it was previously.

44. Ridgeloch requested that the Contractor further inspect the black residue. Upon additional inspection, he identified that the black residue was only on the Caulk.

45. Ridgeloch reached out to Mr. Best again, requesting that he return to the property to confirm the Contractor's findings and to see if this new information or the additional prevalence of the black residue altered his recommendations to Ridgeloch. Mr. Best was

10

specifically advised that Ridgeloch now believed that despite his prior analysis, the black residue was not a mold issue.

46. Mr. Best returned to the community and collected samples of both the Caulk and the black residue for testing and analysis.

47. Despite taking samples of both the Caulk and the black residue, Sherwin-Williams never performed testing on these samples. Sherwin-Williams provided to Ridgeloch a "Certificate of Analysis" for 1050QD Siliconized Acrylic Latex Caulk manufactured in July 2025, a completely different batch than the batch applied to the Ridgeloch units.

48. The Certificate of Analysis was dated July 23, 2025 and identified several tests performed on the caulk as well as the results. Mr. Best sent the Certificate of Analysis to Ridgeloch in or around November 2025.

**B. Sherwin-Williams's Bad Faith Conduct and Ridgeloch's Independent Testing**

49. Even though at the time Mr. Best collected the samples from the Ridgeloch community there was a mutual understanding that Sherwin-Williams would perform testing on the Caulk as well as the black residue, the Certificate of Analysis sent to Ridgeloch did not reflect that any testing was performed on the samples. Instead, the testing completely disregarded Ridgeloch's inquiry, investigation, and complaints related to the Caulk and black residue and instead tested a batch of caulk manufactured after the completion of Ridgeloch's exterior maintenance project.

50. Upon information and belief, rather than test the samples collected by Mr. Best,

11

the Certificate of Analysis reflects batch testing performed in the ordinary course of business and had nothing to do with the concerns raised by Ridgeloch related to the Caulk or black residue.

51.     The Certificate of Analysis indicated that Sherwin-Williams performed five tests on the caulk – a "slump test," a "density unreduced" test, a "caulk general appearance test," a "mid shear rheometer visc" test, and a "PH – reduced method" test.

52.     ASTM C 834 – 05 is the "Standard Specification for Latex Sealants" to which Sherwin-Williams purported the Caulk conformed.[3] Although ASTM C 834 – 05 lists the "slump test" as one test for conformance with the standard, seven other tests are identified, including tests pertinent to the black residue and the Defect, such as the "artificial weathering" test, the "staining" test, and the "tack-free time" test. According to the Certificate of Analysis, no test identified in ASTM C 834 – 05 were performed other than the "slump test."

53.     Based upon the Certificate of Analysis, there is no evidence to support that the Caulk satisfied every test identified in ASTM C 834 – 05 to demonstrate conformance with the standard.

54.     At the time Mr. Best shared the Certificate of Analysis with Ridgeloch, Mr. Best indicated, "Based  on  the analysis under  controlled  conditions,  both  products  were found  to perform within their specified parameters under standard conditions. Importantly, the testing did not indicate any tendency for these products to promote mold or mildew growth when properly applied and maintained."

---

[3] https://dl.azmanco.com/standards/ASTM-C/ASTM-C-Series-Full/C/C834.pdf (last visited June 29, 2026).

55. Importantly, the "standard conditions" under which Sherwin-Williams "applied and maintained" the caulk in order to test it lasted less than 24 hours according to the Certificate of Analysis.

56. Freshly manufactured caulk, observed for less than twenty-four hours cannot be indicative of "standard conditions" nor can it be reflective of how the Caulk responds to proper application and maintenance.

57. Sherwin-Williams could not draw conclusions on the Caulk's "tendency for these products to promote mold or mildew growth when properly applied and maintained" based off testing a different batch of caulk, not performing the correct tests, and observing the caulk for less than a day.

58. The Certificate of Analysis was provided to Ridgeloch to deceive and mislead it as pertains to the properties of the Caulk and whether it was in conformance with ASTM C 834 – 05 or otherwise did not contain the Defect.

59. After receiving the Certificate of Analysis, Ridgeloch sent samples of the black residue and the Caulk to Research Triangle Park Laboratories, Inc. ("RTP") in Raleigh, North Carolina for testing and analysis.

60. RTP's test results confirmed the presence of plasticizer migration and that the black residue consisted of dust, dirt, and vegetative debris instead of mold or mildew.

61. As discussed in RTP's test results, the Caulk's oily surface was identified as Benzyl Butyl Phthalate (BBP), a phthalate additive that migrates to the surface of caulk when caulk is not formulated properly. Migration occurs when: the plasticizer exhibits limited

13

long-term compatibility with the polymer matrix; the polymer network allows molecular mobility; and environmental exposure accelerates diffusion.

62.     BBP is one of the "legacy" phthalate ester plasticizers that has been used for decades to soften polymers and keep sealants and adhesives flexible.

63.     A defining technical drawback of BBP—and external plasticizers more broadly—is that it is not chemically bound to the polymer network; it is physically blended. Because of that, BBP can diffuse through the sealant matrix over time and enrich at the surface, a behavior often described as migration, blooming, or exudation.

64.     Ridgeloch corresponded with Dr. Lucian Lucia in the Department of Organic Chemistry at North Carolina State University. Dr. Lucia explained that plasticizer migration was the sole plausible explanation for the Caulk's oily surface which attracts unsightly black residue. Specifically, the black residue was analytically identified as consisting primarily of environmental particulates (dust, vegetative debris, airborne matter) adhered to a surface containing BBP.

65.     Dr. Lucia concluded that the most likely outcome is continued or accelerated dirt pickup on the Caulk, which would increase the prevalence of black residue on the Caulk, the cost and frequency of cleaning, the risk of cracking and loss of performance from mechanical changes to the Caulk, and water intrusion into the siding which then would become subject to rotting, swelling, and general degrading that undermines the siding's protective performance.

66.     Ridgeloch presented RTP's test results and Dr. Lucia's conclusions to Sherwin-Williams in February 2026. After receipt, Mr. Best indicated that he sent the findings to

14

the Sherwin-Williams legal department.

67.    After following up several times with Sherwin-Williams, Ridgeloch has had no response other than Sherwin-Williams stating that Ridgeloch can buy a different caulk product from Sherwin-Williams with "enhanced mildewcide levels" and "advanced performance features."

### C.  The Caulk Fails to Satisfy Applicable Standards

68.    Sherwin-Williams affirmatively represents and warrants the following as properties of the Caulk[4]:

a.    the Caulk may be for interior or exterior use, and specifically when subject to "exterior weather" the Caulk "[w]ill not crack, discolor or lose adhesion";

b.    the Caulk has certain properties related to mildew resistance, and specifically that the "[c]ured sealant resists mildew growth";

c.    among its basic uses, the Caulk can be applied to "cracks or joints between wood, metal, glass, brick, stone, ceramic and many plastics";

d.    the Caulk is "**Paintable in 20 minutes by brush**,[5] Paintable immediately by spray application, Good flexibility, crack resistant, Water/Weather Resistant, cured sealant is mildew resistant, Interior / Exterior, Water clean-up, Limited 55yr warranty"; and

e.    the Caulk has certain properties related to freeze-thaw, and specifically that the Caulk is "[s]table through 5 cycles."

f.    the Caulk "[e]xceeds all requirements for Specification ASTM C834."

69.    Further, Sherwin-Williams provides a warranty (the "Limited Warranty") for the

---

[4] *See* https://www.sherwin-williams.com/document/PDS/en/035777253366/ (last visited June 29, 2026).

[5] Emphasis in original.

15

Caulk which states:

> For 55 years from the date of purchase, if when applied according to label directions within one year from date of purchase, if this product fails to perform in accordance with the specifications set forth on this label, as your sole remedy, upon proof of purchase, we will replace the product at no cost or refund the original purchase price.

70.     Further, Sherwin-Williams represents that the Caulk exceeds all requirements for Specification ASTM C 834, and thus conforms to the industry standard for sealants.

71.     The North Carolina Building Code has incorporated certain ASTM standards, including ASTM C 834.

72.     In order to conform to industry standards for caulk—ASTM C 834 – 05—the Caulk must satisfy the following requirements[6]:

> a.      "The manufacturing process shall be such as will ensure a homogeneous mix, *free of defects* that would affect serviceability, and provide a consistency suitable for immediate application"[7];
>
> b.      "The sealant shall be composed of latex formulated with appropriate fillers, pigments, and chemical additives to result in conformance to this specification";
>
> c.      "After 21 days cure at standard conditions, the color of the sealant shall be that color that has been agreed upon between the purchaser and the supplier"; and
>
> d.      "The sealant shall conform to the physical requirements specified in Table 1 according to type and grade." Table 1 includes the following:

---

[6] *See* https://dl.azmanco.com/standards/ASTM-C/ASTM-C-Series-Full/C/C834.pdf (last visited June 29, 2026).
[7] *See* https://dl.azmanco.com/standards/ASTM-C/ASTM-C-Series-Full/C/C834.pdf (last visited June 29, 2026). (emphasis added).

16

**TABLE 1 Physical Requirements**

| Test | Requirements | ASTM Test Method |
|---|---|---|
| Extrudability | 2 g/s, minimum | C1183, Procedure B |
| Artificial weathering: | 500 h | C732 |
| Wash-out | none, after weathering | |
| Slump | none, after weathering | |
| Cracking | none, after weathering | |
| Discoloration | as acceptable to purchaser | |
| Adhesion loss | 25 % max (estimated on the basis of a total possible bond area of 45.16 cm² (7 in.²)) | |
| Volume shrinkage: | | |
| Type OP | 30 % max | C1241 |
| Type C | 50 % max | |
| Low-temperature flexibility: | After 500 h Artificial Weathering exposure | |
| Grades −18° and 0° | no cracking through to substrate or adhesion loss | C734[A] |
| Grade NF | none | |
| Recovery | 75 % min (average of all specimens) | C736 |
| Adhesion loss | 25 % or 19.35 cm² (3 in.²) max (of total bond area of all specimens) | C736 |
| Slump | 4 mm (0.15 in.) max (on each specimen) | D2202[B] |
| Stain index | 3 max | D2203 |
| Tack-free time | no material adhering to plastic strip | D2377[C] |
| Color | as acceptable to purchaser | 6.2 |

[A] See 10.1.4 for modification of this test method for 0 °C.
[B] See 10.1.6 for modification to this test method.
[C] See 10.1.8 for modification to this test method.

73. The Caulk fails to conform to ASTM C 834 – 05 (and the North Carolina Building Code) because of the Defect.

74. When determining whether the Caulk satisfied the physical requirements set forth in Table 1 from ASTM C 834 – 05 above, and in performing the tests included in Table 1 to determine conformity therewith, Sherwin-Williams discovered or should have discovered the Defect, and otherwise knew or should have known that the Caulk did not in fact conform to its product representations, the Limited Warranty, industry standards, or the North Carolina Building Code.

75. Sherwin-Williams omitted or otherwise failed to disclose the Defect from its product representations, the Limited Warranty, or its other marketing materials.

76.     Below are pictures evidencing the typical plasticizer migration that occurs:







77.     As seen above, due to the Defect in the Caulk, the Caulk fails prematurely and requires a constant cycle of maintenance and prohibitively expensive replacement.

78.     Ridgeloch was not aware and could not have known that the Caulk was defective before its purchase. If Plaintiff had known of the defects in the Caulk described herein, Plaintiff would not have purchased the Caulk and would not have authorized the Caulk to be purchased or installed on its buildings.

79.     Furthermore, as a result of Sherwin-Williams' design, manufacture, supply, marketing, and/or selling, either directly or indirectly through third-parties or related entities to

purchasers throughout North Carolina, including Plaintiff, Sherwin-Williams obtained the benefits of the laws of North Carolina and profited from North Carolina commerce.

### D. The Limited Warranty Fails of Its Essential Purpose or is Otherwise Unconscionable

80. The Limited Warranty purports to limit the remedy to replacement of the product or a refund of the purchase price, expressly excludes labor costs, and applies only to single-family homes occupied by the original residential consumer purchaser.

81. These limitations render the Limited Warranty inadequate for the vast majority of consumers, including Plaintiff, a homeowners' association responsible for maintaining 41 units within its community.

82. The Limited Warranty's exclusion of labor costs—which constitute the overwhelming majority of the expense to repair and replace the Caulk—effectively eliminates any meaningful remedy for consumers and renders the Limited Warranty illusory.

83. Once the Caulk fails—thereby breaching Defendants' warranties—Plaintiff has no choice but to remove the Caulk from its buildings at considerable expense in order to return its properties to their original condition.

84. Defendants' Limited Warranty limitations, including any remedial limitations and exclusions concerning implied warranties, thus fail of their essential purpose and are unconscionable.

85. Sherwin-Williams makes these representations before purchase and at the time of purchase via sales brochures, marketing materials (including but not limited to store displays,

20

sales seminars, and training materials), and on the Caulk's packaging. These representations became the basis of the bargain when Plaintiff's painting contractor purchased the Caulk, and Plaintiff would not have approved of the purchase of the Caulk and would have instead purchased a competitor's caulk, had it known the Caulk did not meet the applicable standards.

86.     The Limited Warranty fails its essential purpose, is substantively and procedurally unconscionable, and therefore contains no valid disclaimers, as more fully described below, because:

    a.    the Defect exists at the time the Caulk leaves the manufacturing facility because BBP is present in the Caulk's ingredients;

    b.    Sherwin-Williams knew or should have known of the Defect in the Caulk prior to or at the time of sale to consumers according to industry standard testing under ASTM C 834 – 05 to which Sherwin-Williams purported the Caulk conformed;

    c.    Sherwin-Williams knew that its limitation to product replacement as the sole remedy, and not covering labor, rendered the warranty a nullity as the bulk of the cost of using the Caulk was the labor in application of the Caulk and not the cost of purchasing materials and thus the cost of damages from the Defect far exceeds the purchase price of the Caulk;

    d.    Sherwin-Williams sold the Caulk with the knowledge that the replacement remedy contained within the Limited Warranty would result in replacement with caulk containing the same Defect and would exacerbate, rather than mitigate, Plaintiff's injury and would or was likely to fail in the same manner as the Caulk but did not disclose this to Plaintiff;

    e.    Sherwin-Williams's limitation of recovery to single family houses and original residential consumer purchasers arbitrarily excludes purchasers of the Caulk who would otherwise make valid warranty claims pursuant to the Limited Warranty;

    f.    Sherwin-Williams' disclaimer of all warranties, express or implied, including merchantability, other than the Limited Warranty, is a means to

21

circumvent liability for representations or omissions related to the Caulk that Sherwin-Williams knew or should have known were untrue, misleading, or deceptive;

g. Sherwin-Williams excluded "indirect, special, incidental or consequential damages (including lost profits) from any cause whatsoever" from Limited Warranty coverage regardless of whether it is caused by a failure of the product to perform in accordance with the specifications, despite knowing that premature failure of the Caulk would almost certainly cause such damages;

h. Sherwin-Williams was in a superior position to know of, remedy, and disclose the Defect in its Caulk to Plaintiff, who could not have known of the Defect at the time of purchase;

i. Plaintiff had no bargaining power as it was unable to negotiate the terms of the Limited Warranty, including the scope of coverage or disclaimers contained therein. This is further evidenced by the fact the Limited Warranty contains its final terms when the Caulk leaves the Sherwin-Williams manufacturing facilities without any opportunity for input from Plaintiff, which therefore demonstrates the Limited Warranty is non-negotiable prior to or at the time of purchase;

j. Plaintiff had no meaningful choice in the terms of the Limited Warranty, including the scope of coverage or disclaimers contained therein;

k. Plaintiff had no meaningful choice in choosing another brand of caulk, as any other reputable brand would likewise have warranties containing the same or similar terms and limitations and did not have sufficient information to make an informed decision about the adequacy or appropriateness of the Limited Warranty in light of the Defect vis-à-vis other caulk brands' warranties;

l. There was a substantial disparity between the Parties' bargaining power such that Plaintiff was unable to derive a substantial benefit from the Limited Warranty. A disparity existed because Sherwin-Williams was aware that the Caulk was inherently defective, Plaintiff had no notice or ability to detect the Defect, Sherwin-Williams knew Plaintiff had no notice or ability to detect the Defect even if it could have inspected the Caulk prior to purchase due to the latency of the Defect, and Sherwin-Williams knew that Plaintiff would bear the cost of correcting the Defect as Plaintiff

22

had no expertise in the proper ingredients or industry standards for caulk. This disparity was increased by Sherwin-Williams' knowledge that failure to disclose the Defect would substantially limit the Caulk's utility;

m. Sherwin-Williams sold the Caulk with knowledge of the Defect and of the fact that the Caulk would fail well before the expiration of its useful life;

n. Plaintiff would have negotiated better terms in the purchase of the Caulk and Limited Warranty had it been aware of the Defect, and been able to negotiate such terms;

o. The terms of the Warranty unreasonably favor Sherwin-Williams over Plaintiff; and

p. Sherwin-Williams knows that through regular and foreseeable use the Caulk will discolor, degrade, and fail prematurely. This knowledge is further demonstrated by Sherwin-Williams offering other caulk formulations with different ingredients.

87. In addition, the Limited Warranty fails of its essential purpose and making a claim is ultimately futile because replacement caulk will or is likely to fail in the same manner as the Caulk, and a refund would not include the labor for applying the Caulk and thus the Limited Warranty fails to remedy Plaintiff's lack of receiving the benefit of its bargain.

**E. Sherwin-Williams' Failure to Notify and Remedy**

88. Sherwin-Williams' response to warranty submissions and other reasonable requests for assistance and compensation is woefully inadequate.

89. For instance, after noticing black residue, Plaintiff notified Sherwin-Williams of the issues with the Caulk.

90. In response, Sherwin-Williams never sought to make Ridgeloch whole.

23

Sherwin-Williams instead offered discounts on its more-expensive caulk products but never offered to cover the full cost of repairing and replacing the Caulk.

91.     Further, Sherwin-Williams submitted a Certificate of Analysis to Plaintiff after receiving notice of the black residue. The Certificate of Analysis served to conceal the Defect in the Caulk.

92.     The damages suffered by Plaintiff were a foreseeable result of Sherwin-Williams' design and manufacture of the Caulk with the Defect discussed herein. Likewise, the design, manufacture, supply, marketing, and sale of the Caulk is in the complete control of Sherwin-Williams at all times relevant hereto.

93.     Sherwin-Williams has continued to design, manufacture, supply, market, and sell the Caulk without modifying its formula, disclosing the Defect, or warning consumers of the risk of plasticizer migration.

94.     Sherwin-Williams failed to take any steps to notify Plaintiff of the Defect in its Caulk even upon notice of the black residue in the Caulk and inquiry by Plaintiff. Furthermore, Sherwin-Williams has failed to take steps to adequately compensate Plaintiff in order to make it whole for the damage it suffered and continues to suffer as a result of the Defect.

95.     As a result of the Defect, Plaintiff has suffered actual damages. The Caulk on Ridgeloch's units have and will continue to fail prematurely compared to the ordinary, expected, and industry standard service life for caulk, and the period of time warranted by Sherwin-Williams, resulting in and requiring Ridgeloch to expend large sums of money to repair the Caulk.

24

96. At all relevant times, Sherwin-Williams had a duty to disclose to Ridgeloch that its Caulk was and is defective, prone to failure with ordinary and expected use, and otherwise was designed and/or manufactured with an inherently flawed design such that the Caulk is not reasonably suitable for use as an exterior building sealant.

97. Since the Defect in the Caulk is latent and not detectable until manifestation, Plaintiff was not reasonably able to discover its Caulk was defective with diligence at the time of purchase and ultimately only after installation.

98. Because of the Defect, Ridgeloch incurred costs in an amount over $3,000 in an attempt to clean the black residue that accumulated on the Caulk due to the Defect. However, a singular pressure wash of the Caulk was a temporary solution, and the black residue has returned and is more widespread. Because of the Defect, Ridgeloch will continue to incur ongoing cleaning costs because of the Defect.

99. In addition to the damage to the Caulk itself and the boards on which it is applied, the Caulk may have caused damage to Ridgeloch's underlying units because the Caulk failed to function as a sealant barrier to block moisture as intended.

100. Upon information and belief, a reasonable alternative design was available to Sherwin-Williams at the time the Caulk was manufactured. Alternative plasticizers are available for use in the Caulk. Further, upon information and belief, Sherwin-Williams offers alternative caulk products with different ingredient formulations, and competitors to Sherwin-Williams offer different ingredient formulations as well. Specifically, dibenzoate plasticizers, which are polar plasticizers with superior compatibility with latex caulk polymers, were available and are

25

recognized in the industry as providing better long-term performance in sealant applications without the risk of migration associated with BBP. Alternative formulations would avoid the Defect and extend the useful life of the Caulk.

101. Had Plaintiff known that the Caulk was defective or would cause damage, it would not have purchased the Caulk or would have paid less for it.

102. Ridgeloch seeks to recover the costs of cleaning, repairing, and replacing the Caulk. It also seeks injunctive relief requiring Sherwin-Williams to modify the warranty claims process to uniformly provide relief in accordance with its obligations under the law.

<u>**ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS**</u>

103. All conditions precedent for filing this Complaint have been satisfied. This Complaint has been filed prior to the expiration of any applicable statutes of limitations or statutes of repose.

104. Plaintiff is within the applicable statute of limitations and repose for the claims presented hereunder because Plaintiff did not discover the Defect, and could not reasonably have discovered the Defect, with due diligence at the time of purchase or thereafter. Upon discovery of the black residue by Plaintiff, all reasonable diligence was taken to pursue a warranty remedy with Sherwin-Williams.

105. Plaintiff undertook an inquiry into the nature of the Defect, which proved futile. Sherwin-Williams did not disclose the Defect at the time of inquiry and instead continued to conceal the Defect by providing to Plaintiff the Certificate of Analysis and indicated to Plaintiff that there was no issue with the Caulk.

26

106.    Plaintiff has brought the warranty claim prior to the expiration of the warranty.

107.    Sherwin-Williams is estopped from relying on any statutes of limitation or repose by virtue of its acts of fraudulent concealment, which includes Sherwin-Williams' concealment from Plaintiff and the general public that the Caulk was defective, while continually marketing the Caulk as a product that exceeds industry standards and conforms to the Durability Representations.

108.    Sherwin-Williams is in a superior position to Plaintiff and consumers generally to know the truth about its products. Because of this, and because Sherwin-Williams was in control of the Caulk at all times prior to purchase of the Caulk by Plaintiff, including during the design, manufacture, supply, marketing, and sale of the Caulk, Sherwin-Williams had a duty to disclose the truth about the Caulk – namely, that it contained the Defect which rendered Sherwin-Williams' Durability Representations untrue.

109.    Plaintiff had no knowledge of, and no reasonable way of discovering, the latent Defect in the Caulk at the time they purchased the product or when the Caulk was installed on Ridgeloch's units.

110.    Because Sherwin-Williams failed to disclose the Defect to Plaintiff and instead actively attempted to conceal this fact, the statute of limitations should be tolled on Plaintiff's claims.

### FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

111.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging

27

fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Sherwin-Williams is in the best position to know what content it placed on its website and in marketing materials during the relevant timeframe, to the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

112. **WHO**: Sherwin-Williams and its agents made material misrepresentations and/or omissions of fact in its website representations, Limited Warranty, labeling, product packaging and marketing, and through authorized retailers of the Caulk as to demonstrate that the Caulk was not defective and was durable consistent with the Durability Representations.

113. **WHAT**: Sherwin-Williams' conduct was, and continues to be, fraudulent because it omitted and concealed that the Caulk was defective, was not durable, failed to conform to industry standards, and would damage Plaintiff. Sherwin-Williams' employees and representatives made affirmative misrepresentations to Plaintiff at the time of purchase regarding the same qualities, when Plaintiff contacted Sherwin-Williams to make a warranty claim, and during the course of communications with Mr. Best. Further, Sherwin-Williams' conduct has the effect of deceiving Plaintiff into believing that the Caulk was not defective, were "durable," had an effective Limited Warranty, and that the Caulk would not fail prematurely. Sherwin-Williams knew or should have known this information is material to reasonable consumers, including Plaintiff, and would impact consumer choices regarding purchase and warranty, and yet it omits a necessary warning that the Caulk is subject to plasticizer migration by design and thus has the propensity to fail and cause property damage.

28

114.     **WHEN**: Sherwin-Williams made the material misrepresentations and/or omissions detailed herein at the time: (1) Plaintiff purchased the Caulk; (2) Plaintiff applied the Caulk to its units; (3) Plaintiff made a warranty claim; and (4) relevant hereto and continuously from the time of first manufacture and sale of the Caulk to the present.

115.     **WHERE**: Sherwin-Williams' material misrepresentations and/or omissions were made on its website, through marketing materials, in warranties, on the labeling of the packaging, through employees, and through authorized retailers.

116.     **HOW**: Sherwin-Williams made written misrepresentations and/or failed to disclose material facts regarding the true risks of ordinary and expected use of the Caulk.

117.     **WHY**: Sherwin-Williams engaged in the material misrepresentations and/or omissions detailed herein (*e.g.*, knowing and concealing knowledge of the Defect) for the express purpose of inducing Plaintiff to purchase and/or pay for the Caulk.  Sherwin-Williams profited by selling the Caulk when it knew the Caulk would prematurely fail.

118.     **INJURY**: Plaintiff purchased the Caulk when it otherwise would not have absent Sherwin-Williams' misrepresentations and/or omissions, and, alternatively, paid more for the Caulk than it would have absent Sherwin-Williams' misrepresentations and/or omissions. Further, the Caulk resulted in out-of-pocket costs, and failed to provide moisture protection to Plaintiff's units constituting property damage.

## COUNT I
## BREACH OF EXPRESS WARRANTY

119.     Plaintiff adopts and incorporates by reference the allegations contained in

preceding paragraphs as though fully set forth herein.

120. Sherwin-Williams expressly warranted through its Durability Representations that the Caulk is appropriate for its intended use, is "paintable in 20 minutes by brush," has "long lasting flexibility," is "perfect for joints exposed to moderate levels of wear and movement," has "good flexibility, [and is] crack resistant," is "water/weather resistant," is "cured sealant [that] is mildew resistant," "will not crack, discolor or lose adhesion," is "stable through 5 cycles" of freeze-thaw, and is "for interior/exterior use."

121. Sherwin-Williams also expressly represents that the Caulk "exceeds the performance requirements of ASTM C-834," the industry standard for latex caulk.

122. The Limited Warranty incorporates the Durability Representations because it states: "For 55 years from date of purchase, if when applied according to label directions within one year from date of purchase, if this product fails to perform *in accordance with the specifications set forth on this label*, as your sole remedy, upon proof of purchase, we will replace the product at no cost or refund the original purchase price." (emphasis added).

123. Sherwin-Williams designed, manufactured, supplied, marketed, and sold the Caulk with its express warranties into the stream of commerce with the intent that the Caulk would be purchased by consumers like Plaintiff.

124. Through its written warranties, brochures, website, and marketing materials, Sherwin-Williams created express warranties that formed part of the basis of the bargain with Plaintiff.

125. Sherwin-Williams expressly warranted to Plaintiff that the Caulk did not contain

30

the Defect and would not suffer from any condition which would impair its operation or performance such that it would last at least 55 years.

126. These representations became the basis of the bargain between the parties and created collective express warranties that the Caulk would conform to Sherwin-Williams' affirmations and promises. Plaintiff reasonably relied upon these express warranties.

127. As the person responsible for the exterior of the units, Plaintiff purchased the Caulk. Under the terms of these express warranties, Sherwin-Williams is obligated to replace the Caulk sold to Plaintiff or refund Plaintiff for its purchase.

128. Plaintiff would have purchased caulk from a competitor of Sherwin-Williams if Sherwin-Williams disclosed that the Caulk did not conform to Sherwin-Williams' express warranties.

129. Sherwin-Williams breached its express warranties by supplying Caulk in a condition that does not satisfy warranty obligations and by failing to compensate Plaintiff for the damages caused by the Caulk or otherwise honor Plaintiff's warranty claim.

130. Sherwin-Williams is in violation of its warranties at the point of sale because the Defect is present in the Caulk from the time it leaves Sherwin-Williams' manufacturing facility.

131. Sherwin-Williams includes certain disclaimers and limitations in the Limited Warranty. As described in detail herein, the disclaimers and limitations render the Limited Warranty both procedurally and substantively unconscionable or cause the Limited Warranty to fail of its essential purpose. As a result, Plaintiff is entitled to recover all damages it has incurred as a result of purchasing the defective Caulk.

31

132. Plaintiff has complied with the terms of the Limited Warranty. Sherwin-Williams has denied, failed to pay in full, or failed to respond to Plaintiff's valid warranty claims.

133. As a result of Sherwin-Williams' breach of its express warranties, Plaintiff has suffered actual damages in that it purchased and installed on residences an exterior Caulk product that has the Defect and has prematurely failed. This failure has required or is requiring Plaintiff to incur significant expense in repairing or replacing its Caulk. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiff's homes and structures.

134. As a direct and proximate result of Sherwin-Williams' breach of express warranties, Plaintiff has suffered and will continue to suffer actual damages, injury in fact, and ascertainable loss, in an amount to be determined at trial, including repair and replacement costs and damages to other property.

**COUNT II**
**BREACH OF IMPLIED WARRANTIES**

135. Plaintiff adopts and incorporates by reference the allegations contained in preceding paragraphs as though fully set forth herein.

136. Plaintiff is in privity with Sherwin-Williams. At Plaintiff's direction, the Contractor purchased the Caulk on behalf of Plaintiff from a Sherwin-Williams retail store which established direct dealings between Plaintiff and Sherwin-Williams. Further, the Limited Warranty contemplates that the beneficiary of the Limited Warranty is the original purchaser, which is Plaintiff. Further, Plaintiff is the beneficiary of any contractual relationship between the

Sherwin-Williams retail store and Defendants.

137. Sherwin-Williams designs, manufactures, supplies, markets, and sells the Caulk across the country, including in North Carolina.

138. Sherwin-Williams sold the Caulk to Plaintiff, and, in so doing, impliedly warranted to it that the Caulk was of merchantable quality and fit for its intended use.

139. However, Sherwin-Williams' Caulk was not of merchantable quality and not fit for intended use when it left the manufacturing facilities due to the Defect in the Caulk described herein.

140. The Defect renders the Caulk unfit and inappropriate for its intended use for building exteriors because it suffers from plasticizer migration which creates a sticky surface that attracts debris which is unsightly and dramatically decreases the lifespan of the Caulk.

141. Moreover, the Defect will cause the Caulk to fail with ordinary and expected use regardless of any action taken by Plaintiff to preserve the useful life of the Caulk.

142. The Caulk is also unfit for its particular purpose: use as an exterior quick-drying caulk. Sherwin-Williams manufactured and marketed its Caulk for exterior use, including moist and cold weather. Sherwin-Williams knew, or should have known, that its Caulk would be subjected to varying temperatures and weather conditions, including wet cycles, throughout each year. Due to the dramatically decreased lifespan of the Caulk, the Caulk is unfit for this particular purpose.

143. Before purchase, Plaintiff could not have readily discovered that the Caulk contained the Defect and thus was not merchantable, was not of the same quality as those

33

generally acceptable in the trade, and did not conform to the quality previous represented. After Plaintiff became aware of the Defect, Plaintiff notified Sherwin-Williams who failed to make Plaintiff whole.

144. As a result, Sherwin-Williams breached its implied warranties to Plaintiff by producing, manufacturing, distributing and selling the Caulk with an inherent Defect which rendered it unmerchantable, unfit for its intended use and unfit for its particular purpose.

145. Sherwin-Williams includes certain disclaimers and limitations in the Limited Warranty. As described in detail herein, the disclaimers and limitations render the Limited Warranty both procedurally and substantively unconscionable or cause the Limited Warranty to fail of its essential purpose. As a result, Plaintiff is entitled to recover all damages it has incurred as a result of purchasing the defective Caulk.

146. Plaintiff provided Sherwin-Williams actual or constructive notice of the breaches of these warranties, and Sherwin-Williams has failed to cure these breaches.

147. As a direct and proximate result of Sherwin-Williams' breach of implied warranties, Plaintiff has suffered and will continue to suffer actual damages, injury in fact, and ascertainable loss, in an amount to be determined at trial, including repair and replacement costs and damages to other property.

## COUNT III
### NEGLIGENCE/NEGLIGENCE *PER SE*

148. Plaintiff adopts and incorporates by reference the allegations contained in preceding paragraphs as though fully set forth herein.

34

149. At all times material hereto, Sherwin-Williams designed, manufactured, supplied, marketed, and sold the Caulk.

150. Sherwin-Williams had a duty to Plaintiff, as the expected beneficiary and purchaser, to exercise reasonable and ordinary care in the design, manufacture, supply, marketing, and sale of the Caulk either through its own quality assurance and reliability testing or by commissioning and verifying third-party results regarding the same.

151. Sherwin-Williams had a duty to Plaintiff to provide Caulk that complied with the Durability Representations to which Sherwin-Williams represented the Caulk conformed.

152. Sherwin-Williams had a duty to Plaintiff to disclose the Defect in the Caulk to consumers, including Plaintiff.

153. Sherwin-Williams had a duty to Plaintiff to provide Caulk that complied with all applicable industry standards and, in particular, ASTM C 834 – 05, to which Sherwin-Williams represented the Caulk conformed.

154. Sherwin-Williams had a duty to Plaintiff to provide Caulk that complied with all applicable building codes, including the North Carolina Building Code, which incorporates ASTM industry standards. Failure to conform to the applicable ASTM standards which have been incorporated into the North Carolina Building Code constitutes negligence *per se*.

155. At all times, Sherwin-Williams was in a superior position to know the truth about the Caulk and specifically the Defect given that Sherwin-Williams designed, manufactured, supplied, marketed, and sold the Caulk and was in control of the Caulk at all times prior to purchase.

35

156.	Sherwin-Williams breached its duty by designing, manufacturing, supplying, marketing, and selling its defective Caulk for installation on Plaintiff's buildings that did not conform to the applicable industry standards described above.

157.	Sherwin-Williams failed to exercise ordinary and reasonable care when it designed, manufactured, inspected, tested, promoted, distributed, marketed, and sold the Caulk.

158.	Upon notice of the failure of the Caulk to perform as marketed and expected, Sherwin-Williams breached its duty to Plaintiff by concealing the Defect and failing to take remedial action to mitigate Plaintiff's injury.

159.	Sherwin-Williams knew or should have known that the Caulk was defective, would fail prematurely, was not suitable for use as an exterior product, and otherwise was not as warranted and represented by Sherwin-Williams.

160.	It was also completely foreseeable to Sherwin-Williams that Plaintiff would rely upon Sherwin-Williams' representations regarding the Caulk, including the Durability Representations and that the Caulk exceeded industry standards.

161.	As a direct and proximate result of Sherwin-Williams' negligence, Plaintiff has suffered and will continue to suffer actual damages, injury in fact, and ascertainable loss, in an amount to be determined at trial, including repair and replacement costs and damages to other property.

## COUNT IV
## VIOLATIONS OF THE NORTH CAROLINA
## UNFAIR AND DECEPTIVE ACTS AND PRACTICES

162.	Plaintiff adopts and incorporates by reference the allegations contained in

preceding paragraphs as though fully set forth herein.

163. N.C. Gen. Stat. § 75-1.1 makes unlawful, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

164. Sherwin-Williams' designing, manufacturing, supplying, marketing, and selling of the Caulk was in commerce or affected commerce in North Carolina.

165. Sherwin-Williams engaged in unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1 when advertising the Caulk with the Durability Representations and omitting any disclosure of the Defect from purchasers, including Plaintiff. Specifically, Sherwin-Williams:

a. Represented that the Caulk was of a particular standard, quality, grade, or good for a particular use when Sherwin-Williams knew or should have known the Caulk was defective and would not perform as represented;

b. Failed to provide the full cost to repair and replace the Caulk upon being notified of the Caulk's failure by Plaintiff;

c. Chose not to test the Caulk from samples taken from Plaintiff's units, and instead presented a Certificate of Analysis showing caulk testing that was not of the samples taken from Plaintiff's units but instead was a completely different batch of caulk and subsequently presented the results of that testing as if it were responsive to Plaintiff's complaints and showed there is no Defect in the Caulk;

d. Falsely attributed the damage to Plaintiff's Caulk to mold or mildew caused by environmental factors, when Sherwin-Williams knew or should have known the damage was caused by the Defect;

e. Represented that a valid Certificate of Analysis existed for the Caulk which on its face does not conform to industry standards;

f. Failed to disclose known defects in the Caulk at the point of sale or otherwise, and continued to market the Caulk as durable and compliant with industry

37

standards after receiving notice that it was not;

g. Otherwise engaged in practices that are unfair and/or deceptive to consumers, including Plaintiff.

166. Sherwin-Williams' actions in connection with the design, manufacture, supply, marketing, warranting, and sale of the Caulk as set forth herein evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of N.C. Gen. Stat. § 75-1.1.

167. Sherwin-Williams acted willfully, knowingly, and with reckless indifference when it committed these acts of consumer fraud.

168. As a direct and proximate result of Sherwin-Williams' unfair, deceptive and unconscionable commercial practices, Plaintiff has suffered and will continue to suffer actual damages, injury in fact, and ascertainable loss, in an amount to be determined at trial, including repair and replacement costs and damages to other property. Further, Plaintiff is entitled to recover treble damages, punitive damages, attorneys' fees and costs, and is entitled to recover all other remedies available under North Carolina law.

## COUNT V
## PRODUCTS LIABILITY – INADEQUATE DESIGN

169. Plaintiff adopts and incorporates by reference all allegations contained in preceding paragraphs as though fully set forth herein.

170. Sherwin-Williams engaged in the business of designing, manufacturing, supplying, marketing, selling, and/or introducing into interstate commerce, including the state of North Carolina, either directly or indirectly, through third-parties or related entities, its products,

38

including the Caulk.

171.    Sherwin-Williams designed and/or manufactured the Caulk.

172.    Sherwin-Williams acted unreasonably in designing and/or manufacturing the Caulk.

173.    At all times prior to Plaintiff's purchase and use of the Caulk, the Caulk was in the exclusive control of Sherwin-Williams.

174.    Specifically, Sherwin-Williams formulates the Caulk using BBP, which is an improper material selection for use in the Caulk. Because of the inclusion of BBP in the Caulk's formulation, the Caulk was defective at all times from the point at which it left Sherwin-Williams' manufacturing facilities and when Plaintiff purchased and applied the Caulk to its units.

175.    This material selection creates an inherent and foreseeable risk that the plasticizer will migrate out of the sealant matrix over time, resulting in a sticky surface that attracts debris, causes discoloration, and dramatically decreases the lifespan of the Caulk.

176.    Upon information and belief, a reasonable alternative design was available to Sherwin-Williams at the time the Caulk was manufactured. Alternative plasticizers are available for use in the Caulk. Further, upon information and belief, Sherwin-Williams offers alternative caulk products with different formulations, and competitors to Sherwin-Williams offer different formulations as well. Specifically, dibenzoate plasticizers, which are polar plasticizers with superior compatibility with latex caulk polymers, were available and are recognized in the industry as providing better long-term performance in sealant applications without the risk of

39

migration associated with BBP. Alternative formulations would avoid the Defect and extend the useful life of the Caulk.

177.    The Defect in the Caulk renders the Caulk likely to fail prematurely and risks property damage which outweighs any utility of using BBP as the plasticizer in the Caulk's formulation and thus the design of the Caulk is unreasonable.

178.    Under North Carolina's risk-utility test, the design of the Caulk was unreasonable.

179.    The design of the Caulk was so unreasonable that a reasonable purchaser of the Caulk, aware of the Defect, would decide not to purchase or use the Caulk.

180.    The Caulk's defective design was a proximate cause of the injuries and damages sustained by Plaintiff.

181.    As a direct and proximate result of Sherwin-Williams' inadequate design of the Caulk, Plaintiff has suffered and will continue to suffer actual damages, injury in fact, and ascertainable loss, in an amount to be determined at trial, including repair and replacement costs and damages to other property.

## COUNT VI
## UNJUST ENRICHMENT
## (In the Alternative)

182.    Plaintiff adopts and incorporates by reference the allegations contained in preceding paragraphs as though fully set forth herein.

183.    Plaintiff brings this claim in the alternative.

184.    As the intended and expected result of its conscious wrongdoing, Sherwin-Williams has profited and benefited from the sale of the Caulk to Plaintiff.

40

185. Sherwin-Williams has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Sherwin-Williams' affirmative misrepresentations related to the Caulk as well as its omission of the Defect, Plaintiff was not receiving a product of the quality, nature, fitness, or value that had been represented by Sherwin-Williams, and that reasonable consumers would have expected.

186. Sherwin-Williams has been unjustly enriched by its fraudulent and deceptive withholding of benefits from Plaintiff at the expense of Plaintiff.

187. Equity and good conscience militate against permitting Sherwin-Williams to retain these profits and benefits.

188. As a direct and proximate result of Sherwin-Williams' unjust enrichment, Plaintiff has suffered and will continue to suffer actual damages, injury in fact, and ascertainable loss, in an amount to be determined at trial, including repair and replacement costs and damages to other property. Plaintiff seeks an order directing Sherwin-Williams' disgorgement and the return to Plaintiff of the amounts improperly paid to Sherwin-Williams, plus interest.

**COUNT VII**
**FRAUDULENT MISREPRESENTATION AND/OR OMISSION**

189. Plaintiff adopts and incorporates by reference all allegations contained in preceding paragraphs as though fully set forth herein.

190. Sherwin-Williams knew or should have known that the Caulk was defective in material selection, design and manufacture, was not fit for its ordinary and intended use, and failed to perform in accordance with advertisements, marketing materials and warranties

41

disseminated by Sherwin-Williams, and with the reasonable expectations of ordinary consumers.

191.    Sherwin-Williams fraudulently concealed from and/or intentionally failed to disclose to Plaintiff that the Caulk was defective and did not conform to the Durability Representations, would prematurely fail, and that the damages were not the result of environmental factors or mold and mildew. Specifically:

a.      Represented that the Caulk was of a particular standard, quality, grade, or good for a particular use when Sherwin-Williams knew or should have known the Caulk was defective and would not perform as represented;

b.      Failed to provide the full cost to repair and replace the Caulk upon being notified of the Caulk's failure by Plaintiff;

c.      Chose not to test the Caulk from samples taken from Plaintiff's units, and instead presented a Certificate of Analysis showing caulk testing that was not of the samples taken from Plaintiff's units but instead was a completely different batch of caulk and subsequently presented the results of that testing as if it were responsive to Plaintiff's complaints and showed there is no Defect in the Caulk;

d.      Falsely attributed the damage to Plaintiff's Caulk to mold or mildew caused by environmental factors, when Sherwin-Williams knew or should have known the damage was caused by the Defect;

e.      Represented that a valid Certificate of Analysis existed for the Caulk which on its face does not conform to industry standards;

f.      Failed to disclose known defects in the Caulk at the point of sale or otherwise, and continued to market the Caulk as durable and compliant with industry standards after receiving notice that it was not;

g.      Otherwise engaged in practices that are unfair and/or deceptive to consumers, including Plaintiff.

192.    Sherwin-Williams had exclusive knowledge and/or control of the defective nature of the Caulk at the time of sale and at all other relevant times. The Defect is latent and not

42

something that Plaintiff, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

193. Sherwin-Williams had the capacity to, and did, deceive Plaintiff into believing that it was purchasing the Caulk free from defects or that the Caulk would otherwise be able to perform as expected, intended, and represented.

194. Sherwin-Williams undertook active and ongoing steps to conceal the Defect. Plaintiff is not aware of anything in Sherwin-Williams' advertising, publicity, or marketing materials that disclosed the truth about the Defect, despite Sherwin-Williams' actual or constructive awareness of the problem.

195. Sherwin-Williams' misrepresentations and/or omissions to Plaintiff are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Caulk.

196. Sherwin-Williams intentionally misrepresented and/or concealed or failed to disclose material factors for the purpose of inducing Plaintiff to act thereon.

197. Sherwin-Williams exercised control over the material facts, including the presence of the Defect, such that they were not readily available to Plaintiff.

198. Plaintiff justifiably acted or relied upon the misrepresentations and/or material omissions to its detriment, as evidenced by its purchase and use of the Caulk.

199. Plaintiff suffered a loss of money in an amount to be proven at trial, *inter alia*, as a result of Sherwin-Williams' fraudulent misrepresentations, concealment and nondisclosure because: (a) it would not have purchased and used the Caulk on the same terms if the true facts

43

concerning the defective Caulk had been known; (b) it would not have paid a price premium for the Caulk if it knew of the Defect and that the Caulk was likely to fail prematurely and cause damage; and (c) the Caulk did not perform as promised or as expected.

200. Had Plaintiff known that the Caulk was defective or would cause damage, it would not have purchased the Caulk or would have paid less for it.

201. By reason of the foregoing, Plaintiff suffered, and continues to suffer, damage and injury.

## COUNT VIII
## DECLARATORY RELIEF

202. Plaintiff adopts and incorporates by reference all allegations contained in preceding paragraphs as though fully set forth herein.

203. Sherwin-Williams marketed, distributed, and sold its Caulk with the Defect, which was not able to be detected by Plaintiff due to its latent nature. Sherwin-Williams has failed and continues to fail to adequately compensate Plaintiff for the damages caused by the purchase and use of the Caulk and has engaged in a scheme to conceal the Defect.

204. Accordingly, Plaintiff seeks the entry of the following declarations: (a) the Caulk has a defect in its ingredient formulation that causes plasticizer migration and premature failure; (b) Sherwin-Williams' express warranty is unconscionable and/or fails of its essential purpose; and (c) Sherwin-Williams must reassess all prior warranty claims and pay the full costs of repairs for structures on which the Caulk has been installed and associated damages.

## PRAYER FOR RELIEF

44

WHEREFORE, Plaintiff prays for a judgment against Sherwin-Williams as follows:

a. For economic and compensatory damages, and all other damages allowable under the law, sustained by Plaintiff;

b. For actual damages sustained and for treble damages pursuant to N.C. Gen. Stat. § 75-16;

c. For damages for diminution in the value of Plaintiff's properties caused by the defective Caulk;

d. For equitable relief;

e. For an Order declaring that Sherwin-Williams' Caulk has defects that its poor formula causes plasticizer migration, premature failure, an unsightly mess, the necessity of power washing with a chlorine solution and of the removal and replacement of the Caulk; ordering that all Sherwin-Williams' Caulk has a defect in workmanship and material that causes failures; ordering that Sherwin-Williams knew of the defects in its Caulk in that the limitations contained in its purported limited warranties are unenforceable; ordering that Sherwin-Williams shall re-audit and reassess all prior warranty claims on the Caulk, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and ordering that Sherwin-Williams shall establish an inspection program and protocol that will require Sherwin-Williams to inspect Plaintiff's structures to determine whether a Caulk failure is manifest;

f. For an Order declaring that Sherwin-Williams must account and disgorge for the benefit of Plaintiff all or part of the ill-gotten profits it received from the sale of the Caulk, or

45

ordering Sherwin-Williams to make full restitution to Plaintiff;

g.       For an Order requiring Sherwin-Williams to make full restitution to Plaintiff and to disgorge all profits derived from the sale of the defective Caulk to Plaintiff;

h.       For payment of costs of suit herein incurred;

i.       For both pre-judgment and post-judgment interest at the maximum rate allowable at law on any amounts awarded;

j.       For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

k.       For such other and further relief as the Court may deem just and proper.

Respectfully submitted:

/s/Brian D. Flick
Brian D. Flick (0081605)
Marc E. Dann (0039425)
DannLaw
15000 Madison Ave.
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 – fax
notices@dannlaw.com

BRYSON HARRIS SUCIU & DEMAY, PLLC

Scott C. Harris*
NC Bar No.: 35328
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5003
sharris@brysonpllc.com
*Application for Pro Hac Vice Anticipated

46

*Co-Counsel for Plaintiff Ridgeloch Homeowners Association, Inc.*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

/s/Brian D. Flick
Brian D. Flick (0081605)
Marc E. Dann (0039425)
DannLaw
*Co-Counsel for Plaintiff Ridgeloch Homeowners Association, Inc.*